JUDGE PETERS
delivered the opinion oe the court:
James McCasland, who died teslate in the county of Henry in 1849, after providing in the second clause of his will for the payment of his debts, with the interest thereon at the rates he contracted to pay, in the third and fourth clauses made the following disposition of the residue of his estate :
*199 “Third. I give to wife, Mary McCasland, as much of the remainder of my estate, after my debts ‘is’ paid, and such articles as she may choose, as will be sufficient for her support during her life; and the balance of my estate, both real and personal and mixed, I will to my daughter, Nancy Martin, and her children, so that none of it, nor the proceeds thereof, shall be liable or in anywise subject to the payment of any of my son-in-law, John Martin’s-debts' or contracts, but be placed in the hands of--, trustee, for the benefit of said Nancy and her children.
“ Fourth. I appoint my wife, Mary McCasland, executrix, and empower her to choose some suitable man to act with her; and I authorize and empower my executrix and executor to sell and convey whatever property, either real or mixed, they may think best to pay my debts, except my interest in my brother John P. McCasland’s estate, deceased; that I wish to stand undisposed of for the benefit of my daughter, Nancy Martin, and her children; and, at the death of my wife, whatever property she may choose to keep, is to return to my grandchildren, as before described. But in case of the death of Nancy Martin and her children, so that she or they leave no issue whatever, the remains of my estate is to return to my legal-heirs, as though I had died without will or issue.”
The will was probated, and the widow having selected-her brother, Isaac Whittington, to qualify with her, they undertook the execution of the will.
In August, 1858, this suit in equity was brought in the Plenry circuit court, afterwards removed by change of venue to the Oldham circuit court, by the widow against Mrs. Martin, her husband, children, and trustee, alleging that testator was greatly indebted at his death; that it required the whole of his property to pay them, all of which was sold and the proceeds applied to that purpose, *200 except the sum of two hundred and fifty dollars, which she got, as is shown by the settlements of the accounts of the executors, which have been approved and confirmed by the Henry county court, copies of which are exhibited with the petition; that she is old, and so afflicted that she is unable to walk, and helpless, and that she cannot make a support, and has been supported since the death of her husband by her relatives and friends, without charge; that neither she nor her co-executor took said lot in possession, but that it has been used for the use and benefit of the daughter of testator and her children; that it is very valuable; they have received large sums per annum, for rents; and she prays that the sum of three hundred dollars per annum out of the annual rents be adjudged to her as an annuity during her life, that being as little as she can be supported for.
On final hearing her petition was dismissed, and she has appealed to this court.
That the estate of testatoj’, except the lot in Louisville, and about two hundred and twenty-five dollars or two hundred and fifty dollars, which appellant got, was exhausted in the payment of his debts, is conclusively shown by the county court settlements of the executor, which are neither surcharged nor seriously contested; and the advanced age, afflicted condition, and extreme destitution of appellant, are all fully’ established by the proof. And the only question to be solved is, whether, under the will of her husband, she is entitled to a support out of the lot in Louisville, which is the estate he got by the death of his brother, John McCasland, and referred to in the will, as appears from the agreement of the parties, and is all that is left of the estate of testator after the payment of his debts?
*201 It appears from the will that it was the primary object, as it was the imperative duty of the testator, to make ample provision for the support of his widow during her life; hence he gave her as much of the residue of his estate, after the payment of his debts, with such articles as she might choose, as should be sufficient for that purpose, and only gave to his daughter and her children what was left. If, then, it took all he had to maintain his wife, he devoted it to that object, and postponed appellees in the enjoyment of any part thereof until his wife should no longer need it. This is the manifest, and it may be said declared, intention of the testator in the third clause of his will. Is there anything inconsistent therewith in the fourth and last clause? In that clause he authorizes his wife to select some suitable man to act as executor with her, and confers on them the power to sell and convey whatever property they may think best to pay his debts, except his interest in the estate of his brother, John P. McCasland, deceased; that he wished to remain undisposed of, for the benefit of his daughter and her children; and at the death of his wife, whatever remained of the property she chose to retain, was to return to his grandchildren. He does not, in this clause, in express terms, vest a present interest in his daughter and her children in said lot; he only withheld the power from his wife and co-executor to sell it, and gave his reason therefor; and while it may be admitted, that, if this clause stood alone, and to be construed without reference to the preceding parts and whole context of the will, it would be regarded as a devise by implication to said beneficiaries of the lot, but when considered in connection with other parts of the will, the interpretation contended for by appellees cannot be given to it.
*202 Why, it may be asked, if that was the intention of the testator, did he not, in the same sentence in which the power of sale was withheld, devise the lot directly to his daughter and her children ? tie could have done it as easy, and with as few words, as he used in giving his reason for withholding that power. The answer is found in the fact that he had previously charged the whole of his estate with the support of his wife; and looking to the increasing value of the lot, situated as it was in the rapidly growing city of Louisville, and for other reasons which naturally suggested themselves to him, as may be imagined, he prohibited the sale of it; but in doing so, did not exempt it, or the annual profits arising from the rent, from the burden of supporting his wife, which he had previously imposed on the whole of the residue of his estate after the payment of his debts; and this view is perfectly consistent with the language of the fourth clause, saying he wished it (the lot), because he got that from the estate of his brother John, “ to stand undisposed of,” to remain as a part of his estate — for what ? The benefit of his daughter and her children. Then follows the words, connected with the copulate word, “ and at the death, of my wife, whatever property” she may have kept, is to return to my grandchildren. These words, “ whatever property,” clearly mean any, and if need be, all oí the testator’s property left, after the payment of his debts, as he did not expressly exclude any from the burden of supporting his wife. This construction gives to Mrs. Martin and her children whatever may be left after the widow gets a support, and harmonizes the whole, will and gives effect to every part of it.
The lot has been improved, and rendered much more valuable and productive than it was when testator died; but it does not appear that it is the result of any peculiar *203 sagacity of those in possession, or extraordinary skill in its management, but may be attributed rather to the rapid growth of the city and consequent demand for lots and building sites.
This court cannot resist the conclusion that appellant has a clear right, under the will of her late husband, having surrendered all the residue of the estate to pay his debts, to a reasonable sum for her support, out of the annual rents of said lot, which, as the proof shows, were six hundred and eighty-nine dollars per annum from the 1st cf April, 1853, to 1st of same month, 18C6; and for the year ending 1st of January, 1867,' the rent was at least two thousand dollars; and for the year 1867, about four thousand dollars, after deducting taxes, &c. This sum was appellee’s part of the rent; and the property unimproved, according to the evidence, is worth over thirty thousand dollars. These large rents are produced without any outlay on the part of appellees; but from improvements put on it by tenants, who have made them with their own means for the purpose of participating in the rents, and appellant and her co-executor could and probably would have made as advantageous a disposition of the lot, if they had retained it, as appellees have made.
Wherefore, the judgment of the court below is reversed, and the cause remanded, with directions to render judgment in favor of appellant against appellees for two hundred and fifty dollars per annum, from the 16th of August, 1858, this being the day when the original petition was filed, to the 16th of April, 1863, and interest on the aggregate sum from that period, till paid; and for three hundred dollars per annum from the 16th of April, 1863, that being the time when the amended petition was filed, to the 16th of April, 1868, with interest on the aggregate sum from the last named date till paid; and he will *204 adjudge to her an annuity of three hundred dollars per annum from the last named date, to be paid semi-annually ; and the court will retain power over the cause to enforce its judgments, and for such future adjudication as may hereafter be proper.